United States v. Parham. And Mr. Kamens, whenever you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court, Jeremy Kamens on behalf of Mr. Parham. Virginia Code 18.2-53.1 prohibits the use of a firearm or alternatively display in a threatening manner while committing or attempting to commit a predicate felony. The government has effectively abandoned the claim that Virginia common law robbery qualifies as a crime of violence. So the central question in this case is whether the firearm statute categorically satisfies the guidelines definition. We sort of looked at this question more than once in coming to court and it looks to me like you have clearly established that the robbery issue is, you were correct about that. We certified that to Virginia and Virginia gave us a response and so we have now concluded. In that regard, we have to vacate and remand, right? And the question now is whether the firearm aspect is a crime of violence, the use of a firearm in connection with a felony and the district court never reached that. That's true. And so we don't have it developed at all. And since we have to remand it, why don't we just let it be developed by the district court? And given the reasons, yes or no, the court will have the fact that robbery is not a crime of violence. Common law robbery in Virginia is not a crime of violence. And we go from there. The court could certainly do that. It has the power to do it. Well, I mean, the question is we don't have anything before us. There's nobody developed it, argued. I mean, the fact is that the district court didn't address it, didn't reach it. It's squarely before you because the government has raised it. It is, sure. But there's nothing to review. Well, the government has raised it. We'd be deciding it in the first instance. The government has raised it as an alternative basis to inform the decision below. And it wasn't raised or considered by Judge Jackson. We agree with that. Absolutely. The district court relies solely on robbery. And Judge Niemeyer, we ought to give him a chance to take a look at this. We understand that. We'd urge the court not to. The court can review this de novo. It's a question of law. And the question is very easily answered given this court's decision in the United States v. Red from October of 2023. This is not a hard question. We have four arguments, which I'll say to you. But this is not something that the court needs to delay given that the answer is so clear. The government has raised it. And it's squarely before the court. And it's a question of law. If you thought we were going to rule in favor of the government in that first view, rather than get it reviewed, you'd probably want it to go back. That may be true, certainly. But given the court's recent ruling in Red, we don't believe that's consistent with how the court has ruled in this context. There are four reasons why 18.2-53.1 does not categorically satisfy the definition, the guidelines definition of crime of violence. First, the elements require no nexus between the firearm and the predicate offense, other than a temporal one. As long as the firearm is used at some point during the predicate felony, that is sufficient. You know the word use may not be so innocent there. You remember Justice Kagan's discussion of use in Borden. It's directional. It's purposeful. It's got some limitation to it. And when you use it in connection with a felony, there may be a construction. I haven't explored this completely because we don't have the district court. We don't have anything to review in that regard. But I don't know if it's totally a slam dunk. It just suggests all we have to do is to jump through the hoops. It's a question of when you use a firearm in connection with a felony, there may be a little bit more directness. It may be focused more on the actual crime. I'm just picking the language from Judge Kagan's discussion in Borden. I understand. And the question under Virginia law is absolutely clear, and they actually point to an older U.S. Supreme Court case. Virginia says plain meaning of use, right? And they point to Bailey. But the plain meaning of use, if we're allowed to do that, then we can go to a lot of sources. All that Virginia law, and it's very clear, there's no dispute between the parties about the breadth of the word use. Use means to employ, and it could be used for any purpose. And so we've pointed to the Smith case. Well, that's the point that Justice Kagan said was not so. And so I think it's worthy of a discussion. I'm not rejecting what you're suggesting, because there's so many hypotheticals that could be aired and discussed. So, Judge Niemeyer, I don't mean to quibble on this point, but Justice Kagan was talking about the meaning of use in the context of the Force Clause definition of crime of violence, not the meaning of use for purposes of substantive liability. She was using the ordinary meaning of use. And when you use something, there is a deliberateness about it with that verb. And the use focuses on the object. In the context of the Force Clause? Well, any time you use it in a sentence. I use a word in a sentence, that means I'm deliberately adopting that word for the sentence. I understand your argument, and it's worthy of being made. The word use about substantive liability in a criminal statute, that's different than the word use for purposes of the Force Clause. There's a Venn diagram, and there may be overlap, but we're talking about use in the Bailey sense, which is use or employ for any purpose whatsoever, and that's exactly what the Virginia courts have held it to mean. So they've talked about and quoted Bailey to say that use means to barter, just like in the 924C context. The Bailey cases, that's a 1995 case from the Supreme Court. That's correct. When the court was deciding what's the meaning of use in the context of 924C, and they said, for example, if you barter for drugs using a gun by, hey, I'll give you this gun in return for drugs, then that's a use. It doesn't have to be used as a firearm. It doesn't have to be used as a weapon. Now, Justice Scalia, he dissented in the Smith case and said, wait a minute, this necessarily implies a more specific definition of use. It has to be used as a firearm or as a weapon, and the majority said no. There's no limitation, and that's exactly what the Virginia courts say. And so here there's no limitation on the definition of use. It means to employ for any purpose, to knock on a doorbell. It could be used to hit off a lock, or it could have nothing to do whatsoever with the predicate offense. It could be used to scratch your head. Second, the offense, 18.2-53.1, encompasses use of a firearm against property, and that brings it outside the definition of the guidelines of crime of violence. Third, it encompasses use or display of a firearm to threaten self-harm, and we've cited the Virginia Court of Appeals case Breeden v. Commonwealth, where the defendant was convicted of this offense in connection with sexual assault of his former girlfriend, and the reason that self-harm was so important in that case was because the victim in that case said that she wasn't threatened, that she wasn't intimidated, but she was afraid that her former boyfriend was going to shoot himself, and that's why she engaged in the sexual conduct that he forced her to engage in through threatening his own harm. And when the case came up for the Court of Appeals, the defendant said, look, the victim testified that I didn't force her, I didn't threaten her, I didn't use force against her at all, and the Court of Appeals said, but you held the gun to your own head. You put it to your own head and said you were going to shoot yourself if she didn't engage in this conduct, and that was sufficient to satisfy the statute. That brings it outside the force clause definition of the guidelines. The last argument is based on Borden and Red, and that is that there is no mens rea for the firearm element of this offense. That is, it doesn't require what Justice Kagan was talking about in Borden, the directed force at a victim. This could be satisfied by recklessness. We've cited the Virginia Supreme Court in a case called Esteban, which says that if there's no mens rea that's listed in the statute, then we dispense with it. But Kagan excluded that because when you use something, there's a deliberateness in that, which she said satisfied the criminal mens rea, right? And that's right for the definition of a crime of violence. That's exactly right. But we're saying this is outside the definition of a crime of violence, that you can commit this offense through recklessness, reckless use of a firearm, which takes it out of what Justice Kagan was talking about in Borden. I'd point to three cases that the court must ask my friend to answer. The first is Wright v. Commonwealth. Wright v. Commonwealth is a decision in an almost identical context where the Virginia Supreme Court was addressing the question of whether an almost identical statute, that is, use or display of a firearm while committing a predicate drug offense, whether there had to be a nexus between the firearm and the predicate drug offense. And the court said, in the absence of any statutory language supporting the requirement of a nexus between the possession of a firearm and the illegal activity, we cannot impose such a requirement. And then it says compare the very different language found in a federal provision, 18 U.S.C. 924C. My friend says this Virginia statute is just like 924C, but they are entirely different, and the Virginia Supreme Court has said so because 924C requires a nexus between firearm and the predicate offense during and in relation to or must be possessed in furtherance of. The Virginia statute has nothing like that. It has no requirement of a nexus at all. The second case I'd ask the court to review in the context of our arguments is United States v. Red. The government made a very similar argument, and this is a case that came out after the briefing was done, so October of 2023, and the government made a very similar argument in that case against Maryland first-degree assault, which had to be done with a firearm. And the government said, this is an assault. It has to be done with a firearm. That necessarily implies the intentionality that Justice Kagan was talking about in Borden in the plurality opinion. And this court said, we can't assume that there's an intentionality requirement simply from the fact that the offense includes an element of a firearm. It has to be based on the text of the statute or case law that requires intentionality. And there was nothing to suggest that the offense couldn't be committed with recklessness. And that is similar to here. The last case I'd ask the court to look at is Breeden. The government says we're misreading Breeden and that the defendant in Breeden also engaged in force against the victim, and we don't deny that those facts are present in Breeden. But the reason that the court sustained the conviction and found it sufficient on 18.2-53.1, notwithstanding the victim's testimony that she wasn't forced or threatened, is because the defendant used a firearm to threaten his own demise. And that was what was used to commit the predicate offense. So a threat of self-harm is completely sufficient to satisfy this offense, and that brings it outside the definition of a crime of violence, which requires that you use force at another person, namely the victim. I thought in Breeden the court said that they look at the circumstances as a whole, and then they go in and name putting the gun here, and so it wasn't just him threatening to kill himself. They certainly look at the circumstances as a whole, but if I can read that portion of Breeden, you can see it is all about the man's self-harm. The defendant was holding the gun the entire time, putting the gun under his chin, and I'm quoting from Breeden v. Commonwealth 596 S. 2nd 563 at 569. Putting the gun under his chin, Breeden told the complaining witness he was going to blow his head off. He then told her he wanted to make love to her one last time before he ended it. After she refused, he picked up a shotgun in his free hand, told her to go upstairs. While holding the shotgun and pistol, he kicked her, forcing her to climb the stairs to the bedroom. At least two more times, Breeden pointed the pistol at himself and threatened to kill himself. Afraid, quote, afraid he was going to kill himself, unquote, the complaining witness engaged in sexual intercourse with him against her will. He put the pistol on a shelf above the bed within his reach while he raped her. Later, he retrieved the pistol. But the court in Breeden considered all of that, the gun above the shelf, presenting the gun to the victim so they looked at it as a whole. It wasn't just the self-harm. Absolutely. But the question is, under the categorical approach, was that conduct sufficient to constitute a use of that firearm with respect to the predicate felony? And absolutely it was. Otherwise, they didn't need to address that at all. The reason they addressed it is because the victim says she wasn't forced or threatened. And so it was critical to the decision. And looking at it in terms of the categorical approach, which is you decide what is the least conduct that is sufficient to satisfy the elements, then that is enough. One last thing on a completely separate topic. We've talked all about robbery and the use of this offense in the context of robbery. But the rule when we're talking about divisible offenses, that is offenses that have multiple alternative elements, is that when there are no Shepard documents, then the court looks at the least serious of the alternative elements. So the least serious of the alternative elements for 18.2-53.1 is actually abduction, which can be done through deceit. And so a gun could certainly be used to deceive a victim that the person is a police officer. So all I'm saying is that the typical rule that the court applies under the categorical approach is that you don't necessarily focus just on robbery, but you focus on the least serious of the potential predicate offenses. We have provided a motion that our friend doesn't object to, which actually has the charging documents, and it lists in the disjunctive all of the predicate felonies in 18.2-53.1, including abduction. This man, Mr. Parham, was actually charged with abduction. It was dismissed as part of the plea agreement, and he pled guilty for two of the four charges, one robbery and one 18.2-53.1. But abduction is listed in the charging documents. Again, that's not squarely before the court, because we've moved for judicial notice, and my friend doesn't object to it. But I just say that the rule on the categorical approach is that the court looks to the least serious of the alternative elements for the divisible offense. Thank you. Mr. O'Malton. Mr. O'Malton. Good morning, and may it please the court. Daniel O'Connell for the United States. I just heard something new from my friend at the very end there, so I'm going to briefly address that and then move into the bulk of my argument. He was talking about document 51.2, the set of supposed shepherd documents that he's moved this court to take judicial notice. A couple things on that. It was never disputed below. It hasn't been disputed in the opening briefs, and I'm not sure it's really disputed now that the predicate crime of violence under which the defendant was convicted was Virginia Code 18.2-53.1, predicated on a completed robbery. And if you were to look at doc 51-2 at page 5, which is the plea agreement, it actually says the defendant is pleading guilty to two felonies. One is Virginia robbery, and two is a violation of 18.2-53.1, the use of a firearm during the commission of a felony, open parentheses, robbery, close parentheses. So if there were any lingering doubt about what it was that he was convicted of, it's quite clear that it was 18.2-53.1, predicated on a completed robbery. Defendant, likewise, does not dispute that this statute that we're discussing here today is divisible by a primary felony, which in this case is a completed robbery. So that's what we're here to talk about. There are three different ways that this court can and should affirm the sentencing at issue here. One is on issue preservation, and two are on the merits, namely that 53.1 robbery, which is how I'll refer to it, satisfies both prongs of 4B1.2's definition of a crime of violence. And because satisfying either one of those definitions is sufficient to have one valid crime of violence, defendant's base offense level was correctly calculated. It's the only real issue that's identified here, and so this court should affirm on the merits if it decides to reach it. But on issue preservation, Your Honor, respectfully, the government does not agree that the district court did not pass on this issue of whether 53.1 robbery satisfies the definition of 4B1.2's crime of violence. The best place to look for this is pages 63 to 65 of the J.A.A. What's the point? What did you just say? The best place to look for this? No, no, before that, you said on the preservation issue? On the preservation issue, so a couple of things, Judge. No, just what you just said. I just missed it. It's not true as a factual matter that the district court did not rule on this. The best place to look for that is pages 63 to 65 of the J.A.A., and I'll get into that in just a moment. But I think what really bears repeating here and bears emphasizing here is, in the opening brief below, what you just said— You're saying you presented that theory to the district court and it was rejected. It was approved, Your Honor. It was approved. It was approved. It was ruled on. It was ruled on. It was presented by us at pages 50 to 51 of the J.A.A. in our supplemental sentencing memorandum. It was presented orally in court by the government, very explicitly looking at both prongs on page 63 of the J.A.A. But the court never ruled on the 53.1 as a crime of violence, did it? It did, Your Honor. And that is on—so the context, there's a larger context to it, but in its smallest nutshell, where the court should look is pages 63, 64, and 65 of the J.A.A. That's where he ruled. Yes, the ruling is on 63—or, excuse me, 65. The government's argument— He rules on page 65. Okay. And the government says that when— the government argues that 53.1 robbery satisfies both the force clause and the enumerated offense clause of 4B1.2 as a categorical match to generic robbery. The defendant, on page 64, says, well, for the record, we're objecting to 53.1, but all of their arguments are directed towards the force clause. They don't even mention the wholly separate and independent possibility that 53.1 robbery is a categorical match to generic robbery. And then, here's where it's important. On page 65, the court is overruling defendant's objection. The court is quoting from and talking about Virginia robbery under 18.2-58. The government here is not defending that, but he overrules it and says that that qualifies as a crime of violence. He then says, the defendant used a firearm in the commission of this offense back in 2003. The court believes this statute certainly meets the generic definition of robbery. There are two things that are important here. He doesn't say specifically 53.1. He says this statute. But if you were to look at that in context, what does this statute mean? You have to look at it in the context of the sentence that immediately preceded it. The defendant used a firearm in the commission of this offense back in 2003. I thought they were talking about 58. No, Your Honor. He's talking about 53.1. And here's why. The defendant used a firearm in the commission of this offense is tracking the language of 53.1. That's what 53.1 is. 58 does not have use a firearm in the commission of this offense back in 2003. So if the court were to find that what the district court was really referring to in that paragraph was 58, this court would basically have to say that what the district court said in that prior sentence was considering the defendant's real offense conduct in deciding whether or not 58 is a crime of violence. And that's anathema to the categorical search. There's absolutely no evidence that the district court thought that you could look at the defendant's real offense conduct in determining whether or not something is a categorical match to generic robbery. It's simply not present. So what's he talking about? He's talking about 53.1. It tracks the language of the statute. They simply missed it, Your Honor. And they missed it again on appeal. The defendant's burden is to show that there's a prejudicial error at play here. And in order to do that, in order to show that there was a misapplication of 2K2.1, he has to show that he has no valid prior crimes of violence under 4B1.2 of the guidelines. And to do that, you actually have to talk about and address both prongs of 4B1.2 for all of your prior convictions and establish that those are not matches. He does it for Virginia robbery simpliciter. He notes White and Williams, which cover the enumerated offense clause. He makes an argument about common law Virginia robbery simpliciter with regard to it being broader than category. Look, just going back to what you're doing, I was just looking at it. I'm not sure your reading is consistent with what I'm seeing here. The court said, I'm going to make this brief and to the point. The court is going to overrule the objection. The court finds that when the defendant was convicted back in 2003 under 2-58, it was a crime of violence. That statute reads, and the court quotes the whole statute. And then he explains how the conduct fits that statute. The defendant used a firearm in the commission of this offense, that's the 58 that he just quoted, back in 2003. The court believes that this statute certainly meets the generic definition of robbery. And so what he did is he read the 58 and it talks about strangulation and suffocation and so forth. And the court then said, because he was accused of using a firearm, he didn't go to the elements at all. He just went and said, the defendant used a firearm in the commission of this offense. I was talking about 58. I don't see that as he's flipping into some other statute at all. As a matter of fact, I think it's explicit to the contrary. Because he says, under 58, I find it's a crime of violence. He quotes the whole thing in a paragraph and then he says, this statute I just quoted was committed instead of what? With suffocation and all the other things it had just read. With a gun, I find it's a crime of violence. And I hear you, Your Honor. And I don't want to spend too much time on this because we're already getting a little bit long in this section. But he then, in a new topic, says the defendant used a firearm in the commission of this offense. That is 53.1. To hold otherwise is to hold that the judge considered the defendant's real offense conduct, the use of a firearm in the commission of a robbery, in deciding whether robbery is a categorical match to a crime of violence. You can't do that. And we shouldn't. Well, the very next sentence, the court says, I realize that we have a lot of dispute regarding whether robbery is a crime of violence. There have been some differences of opinion. But I think the United States Court of Appeals is going to have to resolve this issue. And it's a real stretch to say that court was then talking about 53.1. He was in the previous sentence. He wasn't in any of those sentences. He had a single topic he was addressing. Respectfully, Your Honor, I disagree. But I think, you know, given the issue. If you're wrong, what do you want to do? So, Your Honor, as you heard my friend say today, it's a pure question of law. It's been somewhat presented to this court. And as he acknowledges, this court is welcome to rule on it in the first instance. He also sought a revamping. If you're wrong, what do you want us to do? You tell me. We're welcome to answer. Do you want us to rule on the issue that wasn't resolved by Judge Jackson? Or do you want us to remand it and have Judge Jackson consider it? Remand is not an option here, Your Honor. Remand is not an option. As I was explaining, the defendant failed in his opening brief to brief an entire issue on this. That constitutes a waiver, regardless of whether or not the court passed on it explicitly at the sentencing hearing. You can't just fail to talk about an entirely independent wrong of 4B1.2 and then ask this court to vacate and remand. You mean he didn't address 53.1? Not as it relates to whether or not it's a match to generic robbery in 4B1.2. It's simply not in the brief. We're talking about crime of violence, aren't we? Not a robbery, because 53.1 is not a robbery. Yes, it is, Your Honor. It requires the proof of a completed robbery in addition to the firearm elements. It's basically an armed robbery statute. Well, it's an armed robbery, yeah. So the question before the court is whether or not it's narrower or a categorical match to generic robbery. And it quite clearly is. Well, my question is, just don't get off the topic. You made a statement that he didn't argue that in his brief. Is that? That is correct, Your Honor. Well, wouldn't that be even a bigger reason not to have us address it at this point and let the district court go through it for the first time? No, Your Honor. When an appellant fails to brief an issue, that would be a waiver. And that would just be an affirmance. That's what we argued in our opening response brief. And that's, I think, plainly the right result under the law. Did they challenge below whether 53.1 was a crime of violence? They challenged it under, very briefly on page 64, directing all of their arguments towards whether or not it's a forced class crime of violence. They ignore it below, and they ignore it here, whether or not it's a categorical match to robbery. So it's not only not preserved below, it's also waived up here. Wasn't the whole issue whether it's a crime of violence? In other words, my question is, they did challenge 53.1 below. The court disposed it under 58. This is the way I read it. And they did not reach the 53.1. And you argue that they didn't argue 53.1 on appeal. They didn't argue the independent aspect of categorical match to robbery on appeal. Why don't you duck my question? My question is, we're trying to determine whether 58 or 53.1 is a crime of violence. Yes. All right, now 58, you concede, is not a crime of violence. We're not defending it on appeal. Right. And so we're now faced with the question, what do we do with 53.1? Yes. The district court didn't address it, and you contend that they didn't brief it on appeal. They did not. OK, well, if that's so, then why do you suggest that we should address it on appeal? Well, Your Honor, the defense is asking you to. We're happy for you to affirm based on waiver. There's just simply no path to a remand here. But I'd like to get into the merits with my remaining time, and I apologize. There's no path to a remand. Sorry? You say there's no path to a remand. Yes, Your Honor. What do you mean there's no path? All we need to do is order it. It would not be correct. You want us to rule on an issue that the district court didn't rule on. And we're supposed to be, we say we write these opinions. We say we're a court of review, not of first view. Your Honor, both parties here are telling you that it's within your power. And you're abandoning what the district court did. You said just stand there. We're not defending what the district court did. We're not defending 58, Robert. You're not defending what the district court did, is the way I read what you said.  So you're throwing the district court over. No, Your Honor. And you want us to save you. That's not, Your Honor, that's not the position that we're in. Without us giving the district court a chance. That's what this stuff about reviewing what the district courts do, being a court of review. The district court's supposed to get a shot, a fair shot. Well, Your Honor. And give us a fair shot by ruling earlier. If the district court did not have a fair shot here, it was because the defendant did not adequately argue. Well, maybe it was because the government didn't do their job. No, Your Honor. We filed a separate sentencing memorandum specifically addressing both of these issues in detail at pages 50 to 51 of the JA. Well, you could have stood up and said, Judge, you didn't address this alternative thing. And we think you ought to finish the job here. So when we get on appeal, the district court of appeals will be able to handle the whole thing. The question, Your Honor, for 2K2.1 is whether there was one, only one. You only need one for it to trigger the base offense level of 20. So once he got to one, there's really no need for him to go and check through all the potential prior convictions at the district court level. If you want to get reversal on appeal, you actually need to establish that none of your prior convictions count as crimes of violence. And they failed to do that here on an important and independent basis, which is whether or not 53.1 is a categorical match to generic robbery. Turning to the merits, 53.1 robbery satisfies both prongs. We'll start with focusing on the force clause part of 4B1.2. The crime requires the use, attempted use, or threatening display of a gun while committing a completed robbery. As we mentioned, this is a crime that's divisible by prior predicate felony, in this case, a completed robbery. And it requires, from the Virginia courts we know, proof of that completed robbery. And from Pierce, the Virginia Court of Appeals case, we know that robbery is the taking with intent to steal a personal property from another, from his person or in his presence, against his will, by violence or intimidation. Now, from Doctor and from other courts' cases examining very similar robbery statutes, we know that in basically all applications, Virginia common law robbery is a valid crime of violence. There's only one method by which it's not a valid crime of violence, and that's the sodomy threat theory, which we know from White and Williams. So the question before this court is, is it possible to commit 53.1 robbery, which requires those firearm elements, under the sodomy threat theory in a way that doesn't involve the use, attempted use, or threatened use of force against the person of another? And the answer, I think, is quite clearly no.  it's going to involve at least the threatened use of force in every reasonable application. And so, for those reasons, that basically resolves the appeal on the merits on both prongs of 4B1.2. I'd like to address, in my remaining time, the defense asks us to look at a couple of different cases. What I would say in rejoinder is, Your Honor, there are several cases that the defendant respectfully is not quoting accurately as to the import of Virginia case law. Most specifically, they ignore the Virginia court's very strong direction in Anselm and in many other cases to interpret criminal statutes in Virginia narrowly in favor of the defendants that are charged with those statutes, not broadly in favor of defendants who might be trying to find any potential hypothetical under the crime of violence approach. There's absolutely no case law to support any of the defendants' contentions that the use of a firearm is completely unbounded to the prior felony, that it can be done accidentally, recklessly, or with no mens rea, or that it can be done simply by employing force against oneself. That's the Breeden case. I'll start there. As Judge Benjamin was noting, there, in Breeden, the Virginia Court of Appeals assessed the entirety of the evidence. And as this court will see from reading that case, there's a lot more than just threats of self-harm involved in that case. And the question was, is all that evidence taken in its totality a sufficient use of a firearm threatening display of authority? What is the language in the statute, I've got it here, but the language in the statute that connects the firearm to the offense, the robbery? Yes, there are a couple different things that connect it. So what we know from the Virginia Court of Appeals... No, the statutory language that connects it. So when we're doing statutory interpretation of a Virginia law, we look at text, context, and purpose to determine what the use of the terms mean. And here we have the term use. You look at it in context. We know from the Rose case that typically... What's the next word after use? Attempted use. I forget that. That's an alternate. Display in a threatening manner. Those are the... No, the connection to the robbery. Oh, I understand. While committing, Your Honor. While committing. Yes. And then it directs... So there's a couple different things here. When you look at use in its context, you've got use paired up with a threatening display. And the omission... So it's the use of a firearm while committing robbery. Yes. And so that is... Use is itself active, as this Court was noting earlier with respect to Borden and similar cases interpreting the... Why isn't that similar to or in and in relation to? It's somewhat similar. I think what my friend here is noting is the absence of in relation to and trying to draw a contrast with 924C. Of course, that's not how we analyze Virginia statutes is by comparing the absence of particular language in federal statutes to the Virginia Code. What we have here is the use while committing a number of series of extremely violent and heinous offenses. Committing means the elements, right? Yes. So the use of the firearm has to be in connection with committing the elements of robbery. That's our position, Your Honor. That the use is not unbounded so as to encompass a head scratch, as my friend here postulates. It's A, not in the Virginia case law and B, not a proper reading of use in the context in the statute. Especially considering under Jones and Holloman the purposes of 53.1, which is to deter violent crime. It wouldn't be very common sense reading that if they use the gun to scratch the back of his head while he's committing the robbery. Precisely, Your Honor. But I suppose there are other hypotheticals that would be closer. I don't know. Your Honor, I see I'm coming down to time. I do regret spending so much time on the waiver issue. I would like to run through a few additional points if the court wants to hear them. Otherwise, I'm happy to sit down. You've got it all covered in your brief, don't you? Your Honor, the only things that are not covered in the brief... Take one minute. Yes, Your Honor. The Wright case, which my friend asked you to look at, is only cited in a 28J. What you have to see when you look at the 308.4 statute interpreted in Wright is that that statute includes possess. And the reasoning in Wright all hinges on the fact that that statute, which is similar in structure but for a drug trafficking offense, includes possess. So it's not accurate to say that you can do a direct comparison to 53.1. That case doesn't even cite 53.1. He also asked you to look at Red, which came out after. That's a statute, the substantive offense of which can be committed recklessly. And that's simply not the case here, as we've established over and over. Virginia robbery has the sufficient heightened mens rea, which resolves both the Borden problem and makes it not a good match to the Red case. I would just if I can tag one more minute, Your Honor, there are a couple other cases cited in reply and in 28Js. For example, Quinzenberry and Rowland, he cites both of these for the proposition that an assailant can shoot a lock at some point surrounding the events of a robbery and have that be a use. Those cases do not stand for that proposition. Just like with Breeden, in Quinzenberry the defendant there shot the victim in the back. I think he also shot a lock at some point in there, but the use that the court was focused on there was shooting someone in the back in a robbery. And that simply is a classic use of crime of violence. At the bottom, what I'm trying to say, Your Honors, is the statutory interpretive moves that the defendant is trying to make here are overly broad. They're not proper applications of Virginia case law, and even the Virginia case law that the defendant cites don't support the hypothetical propositions that would allow you to get to a non-violent use of committing 53.1 predicated on a completed Virginia robbery. It's simply not possible and therefore this court should affirm. Thank you. Mr. Kamens. My friend is correct that Wright does include the word possession, but after that in the statute it says possess, use, or display in a threatening manner a firearm during the commission or while committing a drug felony. And in Wright it says the term while has a temporal meaning and neither that word nor any language used in the statute carries with it the requirement that the firearm is in some way being used in conjunction with the unlawful drug activity or to further such activity. And then it expressly distinguishes 924C from that offense. The government argues that this 18.2-53.1 is just like 924C when the Virginia Supreme Court has explicitly said it is not. With respect to the elements of robbery, robbery is committed through trespass, larceny or taking, putting in fear, and aspartation. And what the Virginia Supreme Court says is that the use of a firearm or alternatively display in a threatening manner during the offense, not during all necessarily those elements, but during the trespass, during the larceny, during the aspartation, that is during the offense. And that would satisfy these elements. It does not require Judge Niemeyer that the firearm be used during all of those elements of a predicate robbery. And so the problem here is there is nothing in the statute for the government to hang its hat on to say this is just like 924C with during and in relation to or in furtherance of. Those words are not in the statute and the Virginia Supreme Court says that means something and has significance. The firearm does not need to be used to establish this offense against a victim to put them in fear. And that's exactly what the government is trying to write in to the statute. With respect to preservation, I'd ask the court to look at United States versus Green. I believe that's a case that Judge King you were on the panel for. The defendant in that case filed a one sentence objection to the guideline in that case with two footnotes and the court said that was sufficient to United States versus Green. It's from 2022 I believe. Probably a lot of U.S. versus Green. And I believe you were on the panel. And in that case it's about whether Hobbs Act robbery satisfies the definition of a crime of violence. And the court said well Hobbs Act can be a violence against property. Was it an argued case? It was an argued case published said Hobbs Act robbery encompasses offensive or violence against property and that's broader than the force clause or the definition in the guidelines. My friend says that we've waived the challenge to the enumerated or the categorical application to the definition of robbery. The argument is the same. The standard for whether robbery there's a categorical match between the offense and the enumerated offense of robbery is whether the offense categorically requires immediate danger to the person. That's the same argument we've been making. That this statute does not require the use of firearm to cause immediate danger to a person. It can be used to knock a doorbell or to threaten harm when you're leaving before you've carried off with the stuff you've taken. It doesn't require the use of a firearm to put someone in fear. And that's the problem with the statute in terms of application to the definition of crime of violence. Lastly with respect to the divisibility of the statute and whether the predicate should be This is a divisible statute. We don't dispute that. But divisible statutes have a bunch of alternative elements. And when the government doesn't put any shepherd documents in the case below then the court's rule for applying the modified categorical approach is to look to the least serious of the predicate offense. And that's all we've done here. We've given you a peek of the actual documents which also include other less serious predicates. But the fact of the matter is whether you accept that or not the rule is the same. The district court failed to apply the guidelines. We'd ask for a remand. Thank you. I just note in your brief that you said the district court did not address the government's alternative contention to which Mr. Parham objected. That his prior convictions under Virginia law were firearm. And you suggested a remand. And that's certainly true. And I don't say this often, Judge Niemeyer, but your reading of the JA-65 is exactly right and is consistent with ours. Well, that is another review. We'll come down and greet counsel and take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin